May it please the Court, again, I'm Julie Hall with Amy Krauss. On behalf of Mr. Styers, I'd like to reserve three minutes of my time for rebuttal. Given this case's unique procedural position, we think that this Court can treat what we've been calling the 2013 case, but this Martinez appeal, as a motion to remand in the 2012 appeal, and that it's not necessary to reach the 60B standard now that the 2012 case is again open and before this court. In any event, however, we think that the, so that would make the 60B consideration moot. But nonetheless, in light of the State's failure to address the 60B factors in its brief, I'd like to just move directly to the substantiality question and address that. The district court used an improper standard in determining the substantiality question in Mr. Styers' Martinez motion. From the Court's opinion in Dietrich, we now know that the certificate of appealability standard is the correct standard for determining substantiality, and that is whether the claim is debatable or has some merit, and the Court is very familiar with that standard. The district court applied the Strickland. That's the plurality view in Dietrich, right? That's right. Not the majority view. That's right, Your Honor. And under the majority opinion, this Court would just remand under Martinez for consideration by the district court under the appropriate standard. Which would be Strickland? Which would be the more COA standard, the substantiality, the some merit debatable standard. Then what's the difference between the majority and the plurality? Well, the plurality is the only controlling standard in the case because it garnered the most votes as to that standard. But the agreement was among the majority that remand was required. So post-conviction counsel's performance in this case I think is not going to be subject to much dispute. Post-conviction counsel did not present a single extra record fact in the post-conviction petition. He didn't retain a mitigation specialist, even though there had never been one on the case. And he never consulted with or retained a mental health expert. The prejudice from post-conviction counsel's deficient performance is sentencing counsel's ineffectiveness. So that gets back to 1990, late in 1990. We apply 1990 standards for effective counsel. I'm sorry? We apply 1990 standards for effective counsel. Yes, Your Honor. And the ABA guidelines from 1999 set forth the requirements of a thorough mitigation investigation. And the 99 guidelines apply to 1990 trials? Yes. The 89 guidelines, yes. They were already in place. In fact, they were in place shortly before even the crime in this case, but certainly well before the trial. So the district court sure didn't agree with you with respect to the proffered or alleged psychiatric evidence that was not presented. The district court was of the view that it didn't really make that much difference. And the main problem with the district court's assessment of prejudice is that it's sort of done in a vacuum because the mitigation in this case has never been investigated. Habeas counsel requested a full neuropsychological evaluation and a complete social history by a mitigation specialist. What the district court permitted Habeas counsel was 60 hours of a mitigation specialist's time. And I'm not sure the number, but basically just consultation with the neuropsychologist. There was significant evidence that came out of that very, very cursory investigation, but it really just scratched the surface of what a mitigation investigation could be. The district court also relied heavily on Dr. Berman's report and said there was a lot of mitigation in there. The problem with Dr. Berman's report was it was a Rule 11 evaluation, which in Arizona means he was only asked to look at competency to stand trial and state of mind at the time of the offense. So McNaughton insanity, basically whether Mr. And that was at the prosecutor's request, asked to look at whether Mr. Stiers was insane at the time of the crime. His report had absolutely nothing to do with mitigation. Didn't he refer to the existence of PTSD diagnosis? There were certainly some mitigating facts. He reviewed, he summarized. So the district court simply said, as I remember reading the opinion, was the alleged new psychiatric information does not add that much, number one. Number two, the exposure to toxic substances because of his father coming back from the factory does not tell us what toxic substances were involved. And number three, there was another item I can't recall, but the court seemed to have gone through, the district court seemed to have gone through the proffered psychiatric evidence and found that it wouldn't have made that much difference, so therefore the claim was not, the claim did not cause any prejudice to Mr. Stiers. Isn't that right? The district court did say that, Your Honor, and we disagree with that holding. Tell me why you disagree with that holding. Because the, what the, what Dr. Briggs' report added and what the family members added was significant. It should, what Dr. Briggs proffered was that a full neuropsychological evaluation would have given depth and meaning and understanding to the deficit. So in other words, instead of having a summarized record that said he fell off a truck and hit his head, the family members' declarations and the neuropsychological evaluation by Dr. Briggs would have shown what does that mean, how does that affect how his brain works, how did it change, how did it change the functioning of his brain, his ability to process things, to think, his ability to think in higher cognitive levels and link facts and logical sequences. Dr. Briggs gave a number of examples. So all those things that give meaning and context to the facts that Dr. Berman was simply summarizing in his report that help a sentencer understand why the mitigation matters were all lacking in this case. But the other problem with the district court, and I think the bigger problem with the district court's decision is that it is based on, you know, it finds the habeas facts lacking when there's never been an opportunity to investigate and discover and develop and present those facts. There's never been an evidentiary hearing. There's been 60 hours of mitigation investigation, which is a drop in the bucket, and there's been no mental health expert to actually assist the defense other than this brief consultation they had with Dr. Briggs. And so it's just... Why would you need an evidentiary hearing if the district court accepted the Because... Because it doesn't... If taking everything that you say to be true, it doesn't add sufficiently to make a difference. The problem is, Your Honor, that the universe that is Jim Steyer's mitigation has never been investigated. So there may be not only far more persuasive... In other words, your allegations weren't broad enough. We didn't... The Habeas Council didn't even know how to make those allegations because they couldn't investigate what was out there. So, in other words, there may be complete species, complete categories of mitigation that haven't even been alleged because we don't know what they are until we go investigate, and that's, you know, as the plurality said in Dietrich, the investigation, the discovery, and the hearing is necessary before you can make the substantiality claim. Because we don't know what we can find and prove until we go look for it, until the mitigation investigation is done. And the toxic substances you mentioned that were... They're a perfect example. We don't know what those toxic substances were because we've never had the resources to go find out. And so we can't possibly even begin to allege how they would have affected the people that were breathing them and eating them and whatever else living in them until we know what they were and until we have an expert to tell us what that means. And all of those things take resources that Habeas Council was denied again and again in the district court, that post-conviction council never even asked for, and that trial council never even asked for. Go ahead. It doesn't matter if when we're reviewing that we see the 60 hours that you're complaining about, but we see nothing that during that 60 hours that suggests a need for additional time. Under normal circumstances, I suppose you can assume, and I think reasonably so, that if a court says 60 hours, you're limited, but only 60 hours, and during that 60 hours something comes forward that says we need more time, then counsel comes back to the court that fits the 60-hour limitation and says here's what we found, we need more time. Does the absence of that kind of information in this record make a difference to us as we review? My memory, Your Honor, is that they made the record actually before the 60 hours was given of why they needed more time than that. But what you can tell from the record after... Yes, they made it before, and I'm wondering then should they have come back and made it afterwards? What we can tell from the record after is that they went out and they interviewed a couple of siblings and the trial investigator. And so what we can tell from that is we're missing. We're missing classmates. We're missing neighbors. We're missing extended family members. We're missing his children. We're missing friends and... What else you're missing is a request for additional time based on what we have now discovered. We need more time, more than the 60 minutes. And if we had a record where that was requested and denied, then we'd have a measuring rod to see should it have been granted. But if there was no request based on that, then is there some deficiency in your argument? I'm just looking to see if they filed that request after, because they did come back and file a new request for the neuropsychologist, which is when they got the consulting hours only. And I'd have to look at the timing, but... Don't you see how that cuts against your argument? What happened in these... Came back, they asked, and they got it. What happened in these cases, Your Honor, after that is the claim is procedurally defaulted. And so in Arizona district courts, once the claim is procedurally defaulted, the court doesn't give any funds for investigating the merits of a procedurally defaulted claim. It's been that way as long as I've been practicing law in federal court in Arizona for almost 20 years. It's interesting now that we're going to decide the correctness of the other, or the need or the lack of the need. All I'm asking is, when we find there was no request, is there a hole in your argument? And your answer to that is either yes or no, I guess. Or you tell me that they did make the request. If they didn't make the request, Your Honor, the reason is because the claim had been defaulted. And once a claim is defaulted, there was no way they were going to get resources for investigation in Arizona. And so don't defend the lawyers not asking, but they knew what the answer was going to be, and that was that there was not going to be funding for that investigation. Let me ask you about 60B. It happens that we're still now working on Ms. Steyer's first petition, but that's just an accident. Is there any reason that you couldn't bring a 60B motion in every — in the case of every prisoner on death row in Arizona raising Martinez's claim? I mean, 60B has no time limit, right? Right. So any prisoner who has had a first petition denied could raise a similar motion, right? They could certainly raise the motion, Your Honor, although they would then have to meet the Phelps factors. And so for prisoners that weren't diligent or that delayed in bringing their motions, at this point Martinez was decided I think over a year and a half ago. But we don't know what's speculating in this in the district court right now. For all we know, there are dozens of these. I have no idea. But there's nothing limited about the motion that has to do with the fact that we happen to be still working on the first petition. This report. Only this — I think you're right, Your Honor, except only this question I raise of is it still a 60B motion. Now that the other case is in front of you, is it still a 60B motion or is it simply a motion to remand that case under Martinez? I think either way, the remand is appropriate. It's just a question of whether it's under — A la Dietrich. I'm sorry? A la Dietrich, the way we did it. Yes. Yes, or George Lopez or I think Running Eagle is the other remand under Martinez. Okay. We'll hear from the warden. Thank you. May it please the court, Jeff Zick again for Director Ryan. Whether this is a 60B or a motion to remand, Stiers doesn't sufficiently come with any argument that this has any merit to remand to the district court. In fact, a remand to the district court would not make any sense at this point because the district court took as true all of Stiers' proffered mitigation that he alleges would give him relief on Claim 8, the ineffective assistance of counsel claim. When you go through the district court's order and the district court talks about all of the evidence that was presented at trial and all of the proffered evidence that is now before the district court, the new evidence would not have changed the outcome of this case. The trial evidence was actually quite extensive with respect to Dr. Berman's report. It laid out the complete mental health history, medical history, and social history that Stiers had. Before the trial court at sentencing, the trial court knew all of Stiers' post-traumatic stress disorder problems, his combat experience in Vietnam, the EEGs that were done prior to trial, showing that he didn't have any cognitive brain dysfunction. But on the other hand, there were reports after those EEGs that indicated that he did have some residual effect from the accident in 1971 where he fell from the truck. So all of that evidence was before the trial court. The new evidence that Stiers proffers with respect to mental health is Dr. Briggs' report, which indicates that he has cognitive dysfunction and he can't think when he's in a stressful situation. But when you look at that evidence and you look at the facts of the case, the record from the trial belies any indication that Stiers acted impulsively or was cognitively impaired at the time. This was not an impulsive crime. This court, this panel, looked at evidence similar in co-defendant Scott's case where Scott alleged that he had brain damage and looked at the facts of this case and said that evidence really is belied by the record and there's no indication that Scott and... But the cognitive dysfunction evidence could be used to humanize Stiers regardless whether it was causally connected, correct? It certainly could be used for that purpose, but it wouldn't have made a difference in the case. Now, how do we review the determination of the district court that it wouldn't have made a difference? Is that an abuse of discretion or is it de novo? I think it, well, I think it's abuse of discretion that you would review his findings on that particular claim or on that particular issue. That would be our position. But when you look at all of that evidence that was proffered, a lot of it was cumulative, the family members that would talk because he had family members at sentencing. The trial court heard all of that information. His sentencing strategy was to portray him as a religious man, a kind man, a caring man, who was a Vietnam veteran who had some issues. That's essentially the same that he would be doing now except a little more cumulative evidence. So it would make no sense to remand this matter back to the district court for that determination when that determination has already been made. If the court, I know our brief didn't address all of the Phelps factors in the 60B because the district court did a very thorough job in that respect. But like I said, either way, whether this is a motion. Well, if you take a look at what the district court found, the Phelps factors, they found only one factor, I think it was a lack of diligence, because he hadn't appealed on the procedural default issue from the 2000 habeas determination. In other words, they were saying Stiers should have been Martinez earlier. He wasn't diligent in not being Martinez. But at that point, that was two years before Martinez, Coleman versus Thompson was the law. Why is that a lack of diligence? I think the lack of diligence also goes not only with respect to not appealing, it goes all the way back to waiving that on appeal. He never raised it. And I understand that it's procedurally defaulted. Coleman applied. It would make no sense to appeal it. Other petitioners were appealing it. And I think the district court relied on Lopez versus Ryan in that particular 60B, where that panel found that Lopez wasn't particularly diligent. Even though Coleman applied, he could have raised it on his cert petition to the U.S. Supreme Court, and he failed to do so. But in Lopez, they danced around the — we danced around the balancing function that went directly to lack of prejudice. That's what the case was really decided upon, wasn't it? Right, yes. Okay. Yes. But the other factors that the district court found with respect to the Phelps factors, we agree with all of those findings that the district court made. Are those equal balancing factors? I mean, if there's six Phelps factors and there were four in favor and two against, does that mean that he wins 4-2, or is there a different weighting among the factors? Well, I think there's an argument that they're not equally weighty. I think in Phelps in particular, I think this court found that nature of the change of the law and diligence were probably the most weighty of the factors to look at. Phelps was certainly diligent. Right. Yeah. But those two factors would be probably more weighty. And the court can, in its discretion, weigh factors differently, you know, with respect to each individual case because you have to look at it on a case-by-case basis. If the court doesn't have any further questions. Thank you. Thank you. I think you're out of time, but we'll give you two minutes for rebuttal if you should take it. Just briefly, Your Honors. I think the procedural posture of this case is very different than Dietrich because Dietrich had already been remanded once for an evidentiary hearing on ineffective assistance of counsel claims. And so their habeas counsel had had the opportunity to develop. They knew what their facts were. And although the State's position is that you've basically seen, you already know what our facts are, that can't be because we don't even know what our facts are. We've never investigated this case. And to say that our mitigation would be nothing more than just cumulative, what's already been presented is really guesswork until we have the opportunity to do that. But don't you have to give us some profit facts to suggest you have a winning case? I mean, we can't be ordering Martinez hearings in every case of somebody on death row. And it wouldn't be in every case, Your Honor. I think in particular in Arizona, the vast majority of the cases that are before the Court are represented by the Federal Public Defender's Office, where whether a claim is procedurally defaulted or not, the investigation is done. They may lack discovery, which might become an issue. But basically, they've investigated the case. And so they're able to show this Court, here's what's out there that we could present. Here's what's out there to show substantiality. We don't have that. We don't have the ability to go out and investigate procedurally defaulted claims and show you what our mitigation is. And so unlike Lopez and Shadd and the recent Jones case from Arizona, it's just simply unknown what mitigation is out there, the depth of it, the breadth of it, anything. But don't you have Dr. Briggs' report? Dr. Briggs was a consultant who just had a few hours to review some records and essentially say, here's what I see in the record and here's what I think I can see. And so that was certainly important and helpful and I think on its own establishes substantiality. But even if it didn't, then there's still the necessity to do this entire mitigation investigation before a determination is made of what we could or couldn't prove. But we have to determine whether you've made a sufficient case to justify a Martinez remand and we take your allegations as true, or at least the district court did. And the district court says giving all weight to all your allegations, it doesn't make any difference. And what we're saying is our allegations aren't there. We haven't been able to make those allegations because we haven't had the opportunity to investigate. So what you're saying is in every case where there's been a procedural default, you're entitled to a Martinez evidentiary hearing to develop evidence so that you can later make allegations to fit the evidence. That's what Dietrich says, Your Honor, that the substantiality determination shouldn't be made until. And it makes sense because for us to just purely randomly guess about what the mitigation is. It doesn't make sense to me and Dietrich. I can't know what the mitigation is until I have a mitigation specialist who goes out. I can hope and guess and to me those aren't. Don't you get back then to Judge Kaczynski's point that everybody on death row, in your view, must be granted an opportunity to search for some mitigation? That may or may not be so. There are certainly, my guess is there are certainly going to be defendants who raised, who had post-competent, post-conviction counsel. Let me put the question to you. What's the measuring rod? How does the court decide, yes, you should mitigate? No, you're not entitled to it. I don't know that this Court has to figure out the measuring rod in this case, because in this case what happened is Mr. Stiers. Well, if you don't have a measuring rod, then your view is that in every death row case you've got to permit somebody to do a search. What I meant was regardless of what the rod is, you have to permit it in this case, because Mr. Stiers did raise an ineffective assistance of sentencing counsel claim. If a request is made and this Court must review, were you right to deny or were you wrong, what measuring rod do we use? In your view, it should be something short of every case. It should be this case. What does the court look at to say, yes, it should be in this case? What do we look at to say, yes, it should have been granted in this case? This Court looks at, and it may have to send it back to the district court for the district court to look at it, but the court, reviewing court looks at, is it a substantial claim? In other words, is there some potential merit to it? Is it debatable? And so in this case it is debatable once, I think it's debatable at this stage, but even more so once we have the opportunity to develop it. Go ahead. It's debatable because? The very best evidence of why it's debatable is Dr. Briggs' affidavit. He would have put that mitigation evidence in context, and there is a world of difference, a massive difference between a Rule 11 report that summarizes records and says this, this, this happened, and a full neuropsychological evaluation, which the habeas counsel requested, which actually explains what are his disabilities? What do they mean? How do they affect him? Even how do they affect him at the time of the crime, if that's relevant? And so all of that. So if a court decides it won't make any difference, so we won't grant it, and you ask the court on appeal, reverse that. What do we do? What's the measuring rod? How do we decide? Yes, we should reverse it. No, we can't reverse it. I think the first thing you have to look at is did habeas counsel have the fair opportunity to present that claim, which means did they get to investigate it? Did they get to figure out what their facts were to even support that claim? And then if the answer is yes, which it isn't in this case, but if the answer is yes, then you look at is it debatable. I think I understand your argument. Okay. Thank you. Thank you. In case you saw yours, stand submitted. We are adjourned.
judges: Kozinski, Farris, Bea